UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KIM THOMPSON, et al.,           )
      Plaintiffs,              )
                                )
vs.                             )    1:05-cv-0636-SEB-VSS
                                )
E. MITCHELL ROOB, JR., et al.,  )
      Defendants.              )

## ENTRY GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

This case comes before the Court on the Motion for Summary Judgment [Docket No. 32] filed by Plaintiffs, Kim Thompson ("Thompson"), Henry Murray ("Murray"), and Kathy Philippi ("Philippi"), on their own behalf and on behalf of a class of those similarly situated (collectively, "the Class").[1]  For the reasons detailed in this entry, we hereby GRANT Plaintiffs' Motion for Summary Judgment as to their constitutional claim, and DENY said motion as to their statutory claim.

Plaintiffs dispute the Medicaid disability eligibility standard under which their applications for Medicaid for the Disabled ("MA D") benefits were denied.  Plaintiffs claim that the standard under which they were denied benefits was incorrect and in

---

[1] We certified this cause as a class action in our Order dated November 18, 2005 [Docket No. 27].  We defined the Class in this cause as:
      all individuals in Indiana who, on or after May 2, 2003, have been, are being, or will be determined to be not eligible for Medicaid based on their disabilities because the individual's impairment does not prevent the individual from performing labor or services or from engaging in a useful occupation at the time of the determination.

violation of the statutorily required eligibility standard. They further claim that the use of the reputedly illegal standard constituted a violation of their procedural due process rights, as guaranteed by the Fourteenth Amendment to the Constitution. Defendants – E. Mitchell Roob, Jr., Secretary of the Indiana Family and Social Services Administration, and Jeanne M. Labrecque, Assistant Secretary of the Office of Medicaid Policy and Planning, in their official capacities as leaders within state agencies responsible for the administration of MA D benefits – dispute both of Plaintiffs' claims.

## Factual Background

State participation in the Medicaid program is voluntary. However, if a state chooses to participate in Medicaid and seeks to obtain federal matching funds, it must submit a plan to the Department of Health and Human Services which meets certain federally-imposed requirements. See 42 U.S.C. § 1396a. Indiana has chosen to participate in Medicaid, and is bound by these requirements. IND. CODE §12-15-1-1 *et seq*.

One provision of federal Medicaid law allows states to select the so-called "209(b) option." A state that selects this option agrees that its MA D eligibility requirements may be no more restrictive than those in place in the state on January 1, 1972. 42 U.S.C. § 1396a(f); Pls.' Mem. at 5. Indiana chose to adopt the 209(b) option in implementing its MA D program. IND. CODE §12-15-1-5. Therefore, Indiana has chosen to provide MA D benefits to those individuals who would have been eligible under its eligibility standard

that was in place on January 1, 1972, and may not adopt a more restrictive standard.

Stipulation ¶ 1.

On January 1, 1972, Indiana's MA D eligibility standard provided that:

> Assistance shall be given under the provisions of this act to any needy disabled person hereinafter referred to as "disabled person" who: (a) has a physical or mental impairment, disease, or loss which is verifiable by a physician possessing an unlimited license to practice medicine in this state and which appears reasonably certain to continue throughout the lifetime of the individual without significant improvement, and *which substantially impairs* his ability to perform labor or services or to engage in a useful occupation.[2]

Indiana's current MA D eligibility standard provides that an individual is eligible for MA D benefits if he or she has:

> A physical or mental impairment, disease, or loss that is verifiable by a physician licensed under IC 25-22.5, that appears reasonably certain to result in death or to last for a continuous period of at least twelve (12) months without significant improvement, and *that substantially impairs* the individual's ability to perform labor or services or to engage in a useful occupation.[3]

Each of the named Plaintiffs in this cause – Thompson, Murray, and Philippi – applied for MA D benefits between August 2003 and November 2004.[4] Each of them

---

[2] IND. CODE §12-1-7-29 (1971) (emphasis added); see also Stipulation ¶ 2.

[3] IND. CODE §12-14-15-1(2)(A) (2006) (emphasis added); see also Stipulation ¶ 3.

[4] After the MA D denials discussed herein, and during the pendency of this case, Ms. Thompson timely appealed her MA D denial; the denial was subsequently upheld by an ALJ. Ms. Thompson did not appeal the ALJ decision, but has since reapplied for Medicaid. Mr. Murray appealed his denial and was eventually awarded benefits. Ms. Philippi cannot be located by Plaintiffs' counsel at this time. Pls.' Mem. at n.1.
   Due to these various circumstances, we have some concerns about the standing of these particular plaintiffs. However, given the size of the certified class, the ease with which substitutions of named plaintiffs can be made when circumstances warrant during the pendency
(continued...)

was subsequently denied such benefits.[5]  Each Plaintiff first received an "unofficial" notice of denial, which stated that his or her impairments were not "*substantial enough to prevent* [him or her] from performing labor or services or engaging in a useful occupation."  Stipulation ¶ 7(a) (emphasis added); Ex. 3-5.  The unofficial notice further gave a statutory citation for the Indiana Medicaid Disability Definition, listed above, and a summary of that standard, including a statement that the disability determination is based on "[w]hether a condition *substantially impairs* the individual's ability to perform labor or services or engage in a useful occupation."  Id. ¶ 7(b) (emphasis added).

The Plaintiffs subsequently received official notices of denial of benefits.[6]  Ex. 1, 2.  Each notice stated that the information provided by the Plaintiff did not confirm his or her impairment as "*preventing* [him or her] from performing labor [or] services or engaging in [a] useful occupation."  Id. (emphasis added).  It also gave a statutory citation to the previously discussed standard.  Id.

On May 2, 2005, Plaintiffs filed a Complaint alleging that the Medicaid disability eligibility standard used by Defendants is incorrect, and violates federal Medicaid law by

---

[4](...continued)
of a case, and the fact that Defendants have not challenged standing, we will proceed on the assumption that standing exists.

[5] Approximately 24,000 class members have received such denial notices from Defendants under the facts herein discussed.  Stipulation ¶ 9.

[6] The parties note that the "unofficial" notice constitutes a part of the official notice, and that both notices are issued in compliance with due process requirements and the terms of the Stipulation to Enter Consent Decree in Minnear v. Davis, IP 07-1502-C H/G (May 22, 1998). Stipulation ¶ 8.

imposing a more restrictive standard than that in place in Indiana on January 1, 1972. The Complaint further alleges that this misuse violates Plaintiffs' due process rights under the United States Constitution. Compl. ¶ 1. Plaintiffs seek declaratory judgment that their rights have been violated, injunctive relief enjoining Defendants to articulate and apply proper MA D eligibility standards, costs and attorney fees, and other proper relief. Id. at 9-10. On March 30, 2006, Plaintiffs filed the Motion for Summary Judgment on which we now rule.

## Legal Analysis

*A.     Summary Judgment Standard of Review*

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

5

(1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

*B.     Plaintiffs' Statutory Claim*

Plaintiffs claim that the MA D eligibility standard imposed by Defendants is more restrictive than the standard in place in Indiana on January 1, 1972, in violation of 42 U.S.C. §1396a(f).  Pls.' Mem. at 1.  Specifically, Plaintiffs allege, based on the unofficial and official notices described *supra*, that the standard used by Defendants requires that an applicant's impairment *prevent* that applicant from working, rather than simply *substantially impair* the applicant's ability to work.  Plaintiffs state that "[t]he plain meaning of the term 'substantially impair' ability to work is that it requires something less than the *total* impairment of the ability to work, or the *prevention* of the ability to work."  Id. at 6.  Therefore, Plaintiffs argue, the standard being applied to their MA D applications is stricter than the allowable statutory standard, in contravention of federal law.

In response, Defendants state that there is a dispute as to the material facts underlying Plaintiffs' claim, and summary judgment is thus inappropriate.  Defendants refer to an affidavit filed by Dr. Dennis Rhyne ("Dr. Rhyne"), Medical Director of the Medicaid Medical Review Team ("MRT"), Office of Medicaid Policy and Planning, Indiana Family and Social Services Administration.  Dr. Rhyne has served as Acting Director or Medical Director of the MRT since January 2005.  Aff. ¶ 1.  Dr. Rhyne states that, in reviewing applications for MA D benefits, the MRT uses the statutory "substantially impairs" eligibility standard.  He claims that this standard was used in determining MA D eligibility for the named Plaintiffs and other members of the Class,

7

and that "[t]he MRT has used this standard continuously since July 1, 2003." Id. ¶¶ 3, 4. Dr. Rhyne contends that the challenged "prevent" language in both the unofficial and official notices "[does] not reflect a change in . . . the disability standard applied by the MRT or make the standard more restrictive than either the standard in place on January 1, 1972 or the current standard[.]" Id. ¶ 8.

  Defendants maintain that, in light of Dr. Rhyne's affidavit, there is a clear dispute of material fact – namely, whether the state actually used the correct (substantial impairment) or incorrect (prevention) legal standard in determining Plaintiffs' MA D eligibility. Defs.' Resp. at 5. Therefore, Defendants argue, Plaintiffs' Motion for Summary Judgment must be denied as to this claim.

  Plaintiffs essentially concede as much in their Reply. See Pls.' Reply at 2 ("[Dr. Rhyne's] affidavit does create a factual dispute about whether or not the defendants actually used the incorrect MA D standard in denying any MA D application."). However, Plaintiffs raise an argument that "[i]t is unclear how Dr. Rhyne knows that no class member's MA D application was ever denied using the wrong eligibility standard. . . . Dr. Rhyne does not state in his affidavit that he reviewed every class member's MA D application file to ensure that, even though the MRT *said* it was using the incorrect eligibility standard, it *actually* used the correct eligibility standard in every one of those class members' cases." Id. at 2 n. 4.

  In our view, Dr. Rhyne's affidavit clearly raises an issue of material fact as to this claim, thereby rendering summary judgment inappropriate. Whether the correct MA D

eligibility standard was actually applied to Plaintiffs is surely a material fact – indeed, it is the gravamen of Plaintiffs' statutory claim. Plaintiffs' rather speculative impugnment of the veracity and reliability of Dr. Rhyne's affidavit cannot preclude this holding. In order to defeat Plaintiffs' motion, Defendants are not required to prove the truth of Dr. Rhyne's statements beyond a shadow of a doubt. Rather, they need only demonstrate that there is a genuine dispute as to these facts, such that a reasonable jury could return a verdict for the nonmovants. See Anderson, 477 U.S. at 248. Construing the facts of this case in a light most favorable to Defendants, and drawing all reasonable inferences in favor of Defendants, we find with little difficulty that a dispute of material fact exists which precludes summary judgment on this claim. See id. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Therefore, Plaintiffs' Motion for Summary Judgment is DENIED as to Plaintiffs' federal statutory claim.

*C.     Plaintiffs' Constitutional Claim*

Plaintiffs further seek summary judgment on their constitutional claim. This claim is based on the allegation that Defendants' failure to implement and provide notice of an ascertainable and correct MA D eligibility standard infringes upon Plaintiffs' procedural due process rights, as protected by the Fourteenth Amendment. Pls.' Mem. at 7. The Fourteenth Amendment guarantees that states may not deprive citizens of life, liberty, or property interests without due process of law. U.S. CONST. amend. XIV.

Plaintiffs bring their claim pursuant to 42 U.S.C. § 1983.  Compl. ¶ 1.  By naming Defendants in their official capacities as government officials, Plaintiffs seek redress from the state itself.  See Brandon v. Holt, 469 U.S. 464, 471-72 (1985).  Section 1983 "creates a cause of action for federal statutory as well as constitutional rights . . . including, in some circumstances, violations of the Medicaid Act."  Bryson v. Shumway, 308 F.3d 79, 88 (1st Cir. 2002); see also Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498 (1990).  In order to succeed on their procedural due process claim under 42 U.S.C. § 1983, Plaintiffs must demonstrate the existence of an "unambiguously conferred" federal right.  Gonzaga Univ. v. Doe, 536 U.S. 273 (2002); see also Blessing v. Freestone, 520 U.S. 329, 340 (1997) ("A plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*.").  In the procedural due process context, this right takes the form of a protectible liberty or property interest.  See Mathews v. Eldridge, 424 U.S. 319, 332-33 (1976); Brown v. City of Michigan City, 462 F.3d 720, 728 (7th Cir. 2006).

In order for a property interest in a government benefit to exist, a person "must have more than an abstract need or desire for it. . . . He must, instead, have a legitimate claim of entitlement to it."  Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).  Such a property interest arises not from the Constitution directly, but from "an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Id.  Therefore, an initial inquiry must be made as to whether Plaintiffs did, in fact, possess such an interest here.

If such an interest is found, we then turn to the question of whether Plaintiffs were

deprived of their constitutionally protected interest without due process of law.  "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*.  The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." Zinermon v. Burch, 494 U.S. 113, 125-26 (1990) (emphasis in original).  Therefore, we examine the procedures provided by the state in order to determine whether they were "constitutionally adequate" to ensure due process.  Id. at 126.  See also Latimer v. Robinson, 2005 WL 1513103 (6th Cir. 2005) (describing the "three inquiries" which must be made to determine if a procedural due process violation is established in a § 1983 action: the existence of a protectible interest, a deprivation, and whether adequate procedures were afforded).

     Plaintiffs maintain that they do have a protectible property interest in MA D benefit eligibility.  Citing a line of cases from the Seventh Circuit and others, they maintain that an entitlement to MA D eligibility exists because of the existence of clear, objective eligibility criteria.  See, e.g., Davis v. Ball Mem'l Hosp. Ass'n, 640 F.2d 30, 38 (7th Cir. 1980) ("Due process protections are necessary to make the factual determination of actual eligibility a rational process. [Generally] a property interest [exists] when . . . conditional benefits are at stake.").  "The eligibility cases in which an entitlement has been found ordinarily make assistance mandatory when eligibility is found."  Id.

Plaintiffs argue that the specified statutory eligibility criteria for MA D benefits found in IC § 12-14-15-1 support an interpretation that MA D is an "entitlement" in Indiana, and that they therefore have a property interest in such benefits which cannot be denied without due process. Pls.' Mem. at 7-8.

Defendants raise two arguments in response to Plaintiffs' claim of a statutory entitlement. First, they argue that Plaintiffs have not identified an independent source of the property right they are claiming. Defs.' Resp. at 7. Further, they respond that the situation at bar can be distinguished from situations in which benefits constitute statutory entitlements because Plaintiffs "had only applied for benefits," whereas in other cases the plaintiffs "were already recipients of those benefits." Id. at 6.

We find that Plaintiffs have adequately articulated a claim to a property interest to which due process protections apply. As they point out, the Indiana MA D eligibility statute (IC § 12-14-15-1) "establish[es] 'substantive predicates' to govern official decision making . . . [and] mandate[s] the outcome to be reached upon a finding that the relevant criteria have been met." Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 462 (1989); Pls.' Reply at 4. The Indiana statute states that MA D benefits *shall* be granted to a needy disabled individual who meets specified and objective criteria; it provides for no discretion on the part of the administrative agency, thus establishing an entitlement to MA D benefits for any individual who qualifies.

The Supreme Court has stated that "[i]n the Medicare and the Medicaid Programs the Government has provided needy patients with both direct benefits and indirect

12

benefits.  The direct benefits are essentially financial in character . . . The Government cannot withdraw these direct benefits without giving the patients notice and an opportunity for a hearing on the issue of their eligibility for benefits."  O'Bannon v. Town Court Nursing Center, 447 U.S. 773, 787-88 (1980).  See also Goldberg v. Kelly, 397 U.S. 254, 261-64 (1970); Gomolinsky v. Davis, 716 N.E.2d 970, 973-75 (Ind. Ct. App. 1999) (applying procedural due process protections to Indiana Medicaid benefits).  Such direct benefits are at issue here.  Thus, in our view, the MA D eligibility provision creates a protectible property interest.[7]

Therefore, we now address the question of whether Plaintiffs suffered a deprivation of their property interests without due process of law.  It is important to recognize precisely the deprivation that Plaintiffs allege.  As discussed in Part B, for purposes of summary judgment, we assume that Defendants *actually* used the correct MA D eligibility standard in evaluating Plaintiffs' applications.  However, Plaintiffs contend that, even if the correct standard were actually used, Defendants *still* violated their procedural due

---

[7] Defendants' two arguments on this point are unpersuasive.  First, Plaintiffs are not asserting a property interest based solely on the Constitution; they clearly *have* articulated an independent state-law source of the interest – namely, the MA D eligibility statute.  Second, we do not view the fact that Plaintiffs were *applicants*, rather than active recipients, of MA D benefits to be a material distinction as to the existence of a protectible property interest.  See Holbrook v. Pitt, 643 F.2d 1261, 1278 (7th Cir. 1981) ("Applicants who have met the objective eligibility criteria of a wide variety of government programs have been held to be entitled to protection under the due process clause."); Kapps v. Wing, 404 F.3d 105, 115-16 (2nd Cir. 2005) ("Every circuit to address the question . . . has concluded that applicants for benefits, no less than current benefits recipients, may possess a property interest in the receipt of public welfare entitlements. . . . The rationale for recognizing applicants' due process rights in these cases is apparent.  Statutory language may so specifically mandate benefits awards upon demonstration of certain qualifications that an applicant must fairly be recognized to have a limited property interest entitling him, at least, to process sufficient to permit a demonstration of eligibility.").

process rights "by providing notices that *stated* individuals were denied based on the wrong standard." Pls.' Reply at 2.  Plaintiffs maintain that "[t]his failure to provide notice of the correct eligibility standard and reason for denial makes it difficult, if not impossible, for plaintiffs to adequately prepare their cases for appeal hearings, or to even determine whether they have a good basis for appeal."  Pls.' Mem. at 10.

Defendants' sole argument[8] as to the question of how much process Plaintiffs are due is that both the official and unofficial denial notices inform the applicant of his or her right to administrative appeal.  Beyond that, an applicant then has the opportunity for judicial review of his or her denial.  Therefore, Defendants claim, "it appears that plaintiffs here are already receiving all the process that they would be due under the Supreme Court's decision in Roth."  Defs.' Resp. at 7.

In the public benefit context, procedural due process requires "ascertainable eligibility standards" to be articulated and implemented, in order to guarantee objectivity and provide adequate notice.  Carey v. Quern, 588 F.2d 230, 232 (7th Cir. 1978); White v. Roughton, 530 F.2d 750, 753 (7th Cir. 1976); Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976).  Our circuit has previously held that a Medicaid applicant must be "made aware of the reasons for the agency's initial denial of his request . . . [so that he may] establish all pertinent facts and circumstances at his appeal hearing."  Featherston v. Stanton, 626 F.2d

---

[8] It should be noted that Defendants' response on this point is fairly cursory.  Their response addresses only one short paragraph, and no authority, to the quite salient question of how much process is due.  Moreover, they fail to directly address the points raised by Plaintiffs in their pleadings.

591, 595 (7th Cir. 1980). Clearly, one of these "reasons" for denial would be an accurate statement of the eligibility standard. Without a correct understanding of the objective test which must be met for MA D eligibility, the ability of a denied applicant – who may be without counsel – to mount a successful appeal may certainly be impeded.

We accept Plaintiffs' assertion that the "prevention" language is not an accurate reflection of the statutory "substantial impairment" standard, and indeed, is more restrictive. The plain meaning of these words suggests as much. A dictionary definition of "prevent" – "to keep from happening . . . avert; thwart"[9] – suggests a definitive, total inability of something to occur – here, of an applicant being able to work. On the other hand, substantial impairment suggests a somewhat less stringent standard – that the applicant's ability to work would be "diminish[ed] in strength, value, quantity or quality" to a degree "considerable in importance, value, . . . amount, or extent."[10] The Indiana Court of Appeals has interpreted such a distinction in the MA D eligibility statute, and we concur in its interpretation. See Moore v. Indiana Family and Soc. Servs. Admin., 682 N.E.2d 545, 548 (Ind. Ct. App. 1997) ("[T]he statute in question does not require that [the Plaintiff be] unable to join the workforce. The statute refers to a substantial impairment in his [or her] ability to be a part of that workforce."). Compare similar interpretations of the "substantially limits" language in the Americans with Disabilities Act: Bragdon v. Abbott, 524 U.S. 624, 641 (1998) ("The Act addresses substantial limitations on major life

---

[9] The American Heritage Dictionary of the English Language 1038 (1976).

[10] The American Heritage Dictionary of the English Language 659, 1284 (1976).

activities, not utter inabilities."); Toyota Motor Manufacturing v. Williams, 534 U.S. 184, 196 (2002) ("[S]ubstantially in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'").

The denial notices issued by Defendants contain both the correct and incorrect eligibility standards. The unofficial notice includes the "prevent" language in an enlarged font in the middle of the letter, and the statutory "substantially impair" standard at the conclusion of the letter in small fine print. The official notice contains the "prevent" language in all-caps at the beginning of the notice, and lists the statutory citation (but not the statutory language) underneath. The presence of the correct standard (on the unofficial notice) and the correct statutory citation (on the official notice) does not, in itself, redeem the adequacy of the notice. Given the relative position of each standard on the notices, there is a high likelihood of conflation or misunderstanding of what the statutory standard actually is.

Defendants' argument – that the availability of administrative and judicial review provides due process under Roth – misses the mark. The problem here is not the *availability* of such review, but what notice Defendants provide which affects Plaintiffs' understanding of their denial and ability to prepare for such appeals. It is this incorrect notice which we hereby hold to be a violation of Plaintiffs' due process rights as a matter of law. Therefore, Plaintiffs' Motion for Summary Judgment is GRANTED as to Plaintiffs' constitutional claim.

For the foregoing reasons, we hereby DENY Plaintiffs' Motion for Summary


Judgment as to their federal statutory claim, and GRANT Plaintiffs' Motion for Summary Judgment as to their constitutional due process claim.  IT IS SO ORDERED.

Date:  10/19/2006

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Barbara A. Nardi
INDIANA STATE ATTORNEY GENERAL
bnardi@atg.state.in.us

Jacquelyn Bowie Suess
ACLU OF INDIANA
jsuess@aclu-in.org